IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MODERN VASCULAR OF SOUTHAVEN, LLC, HOUSTON VASCULAR SPECIALISTS CORP., FORT WORTH VASCULAR SPECIALISTS GROUP, MODERN VASCULAR OF DENVER, LLC, and SAN ANTONIO VASCULAR SPECIALISTS CORP., | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:23-CV-1171-K |
| QLARANT INTEGRITY SOLUTIONS, LLC, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Qlarant Integrity Solutions, LLC's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 21) (the "Motion"), Plaintiffs' Response (Doc. No. 25), and Defendant's Reply (Doc. No. 28). The Court has carefully considered the Motion, Response, Reply, applicable law, and relevant portions of the record. For the following reasons, the Court concludes that it lacks subject-matter jurisdiction because Plaintiffs have not channeled their claims through the United States Department of Health and Human Services. Therefore, the Motion is **GRANTED** under Rule 12(b)(1).

## I. Factual and Procedural Background

Plaintiffs Modern Vascular of Southaven, LLC; Houston Vascular Specialists Corp.; Fort Worth Vascular Specialists Group; Modern Vascular of Denver, LLC; and San Antonio Vascular Specialists Corp. (collectively, "Plaintiffs") own clinics that treat patients with peripheral arterial disease, including Medicare beneficiaries. Pls.' Am. Compl. (Doc. No. 12) ¶¶ 10, 18 (all record citations herein are to the document assigned page or paragraph numbers). Medicare is a national health insurance program administered by the Centers for Medicare & Medicaid Services ("CMS"), which is an agency within the United States Department of Health and Human Services ("HHS"). Doc. No. 21 at 1 n.1, 3. As Medicare providers, Plaintiffs submit claims for payment to Medicare Administrative Contractors ("MACs"). Doc. No. 12 ¶ 22. The claims submitted to MACs are subject to review by Unified Program Integrity Contractors ("UPICs"), Doc. No. 21 at 1 n.1, who review the claims for suspected fraud, waste, abuse, and improper payment, Doc. No. 12 ¶¶ 21–22.

Defendant Qlarant Integrity Solutions, LLC ("Defendant") is a UPIC. Doc. No. 12 ¶¶ 15, 17. As a UPIC, Defendant is empowered to suspend payments, in whole or in part, when it determines there is a credible allegation of fraud against a provider. Doc. No. 21 at 3 (citing 42 C.F.R. § 405.372(a)(4)). Defendant operates in the "UPIC Southwestern" jurisdiction, meaning Defendant is responsible for reviewing Plaintiffs' claims submitted to MACs. *See* Pls.' Resp. (Doc. No. 25) at 2.

On February 14, 2023, Defendant issued Notices of Payment Suspension (the "Suspension Notices") to each Plaintiff pursuant to 42 C.F.R. § 405.371(a)(2). Doc. No. 12-1 at 1, 3, 5, 7, 9. According to Defendant, CMS determined there were "credible allegations of fraud" related to Plaintiffs' services billed to Medicare and suspended all Medicare payments to Plaintiffs. *Id*. Pursuant to 42 C.F.R. § 405.372(b)(2), the Suspension Notices informed Plaintiffs of their right to submit a rebuttal statement within 15 days, indicating why the provider believes the suspension should be removed. Doc. No. 12 ¶ 22; Doc. No. 12-1 at 1–10. The Suspension Notices also stated that, if Plaintiffs chose to submit a rebuttal statement, Defendant would "review that statement (and any supporting documentation) along with other materials associated with the case." Doc. No. 12 ¶ 22; Doc. No. 12-1 at 1–10. Then, based on a review of the information Plaintiffs submitted and all other relevant information known to Defendant, Defendant would "determine whether the suspension should be removed, or should remain in effect within 15 days of receipt of the complete rebuttal package, consistent with 42 C.F.R. § 405.375." Doc. No. 12 ¶ 22; Doc. No. 12-1 at 1–10.

Within their 15-day deadline, Plaintiffs submitted a Consolidated Rebuttal Statement to Defendant on February 27, 2023. Doc. No. 12 ¶ 25. Plaintiffs allege the Consolidated Rebuttal Statement was delivered to Defendant on February 28, 2023. *Id.* ¶¶ 26–29. However, Plaintiffs did not receive Defendant's response until April 7, 2023, *id.* ¶ 28, which allegedly means Defendant failed to timely respond pursuant to the 15-day deadline mentioned in Defendant's Suspension Notices and 42 C.F.R.

§ 405.375, *id.* ¶¶ 26–29. Based on this failure, Plaintiffs claim they were (1) deprived of a variety of business opportunities, (2) forced to curtail most of their clinic operations, and (3) forced to deprive patients of access to procedures. *Id.* ¶¶ 32–33, 35–36.

Plaintiffs filed suit against Defendant in state court. *See generally* Pls.' Orig. Pet. (Doc. No. 1-1). Plaintiffs claim Defendant's alleged failure to timely respond, and the resulting harm, amount to (1) negligence, and (2) negligence per se in violation of 42 C.F.R. § 405.375 (collectively, the "Claims"). Doc. No. 12 at 8–9. Defendant removed the case to federal court based on federal officer removal jurisdiction and federal question jurisdiction with supplemental jurisdiction over state law claims. Notice of Removal (Doc. No. 1) at 3, 12 (citing 28 U.S.C. §§ 1367(a), 1442, and referencing federal question jurisdiction); Def.'s Resp. to Ct. Order (Doc. No. 7) at 2 (clarifying that Defendant is not asserting diversity jurisdiction as basis for removal). Following removal, Plaintiffs timely filed an Amended Complaint. *See generally* Doc. No. 12. Defendant then moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Doc. No. 21. Plaintiffs responded to the Motion, *see generally* Doc. No. 25, and Defendant replied, *see generally* (Doc. No. 28.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis Cnty.*,

910 F.3d 809, 811 (5th Cir. 2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Under Rule 12(b)(1), a party may challenge the subject-matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). The district court may dismiss for lack of subject-matter jurisdiction based on the complaint alone. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The court must accept all nonfrivolous allegations in the complaint as true, *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *McClain v. Pan. Canal Comm'n*, 834 F.2d 452, 454 (5th Cir. 1987)), and if the court determines that it lacks subject-matter jurisdiction, it must dismiss the action, FED. R. CIV. P. 12(h)(3).

If a case survives a Rule 12(b)(1) challenge, the court may then consider a Rule 12(b)(6) claim. *See Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. If a plaintiff pleads factual content that allows

the Court to reasonably infer that the defendant is liable for the alleged misconduct, the claim has facial plausibility. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III. Application of the Law**

The Court begins with the jurisdictional challenge raised in the Motion pursuant to Rule 12(b)(1). Defendant argues that Plaintiffs' Claims arise under the Medicare Act (the "Act") and must be channeled through the HHS before this Court can exercise jurisdiction. Doc. No. 21 at 1. Plaintiffs counter that the Claims do not arise under the Act; rather, the Claims stem from Defendant's "negligent conduct" which is "unrelated to any appealable determination." Doc. No. 25 at 5. For the following reasons, the Court agrees with Defendant and concludes that (1) the Claims arise under the Act, and (2) Plaintiffs failed to channel their Claims through the HHS and exhaust their administrative remedies. Therefore, the Court must dismiss.

Federal courts' ability to exercise jurisdiction over claims "arising under" the Act is sharply limited. *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012); *see also Baylor All Saints Med. Ctr. v. Kennedy*, 161 F.4th 298, 302–03 (5th Cir. 2025). Under 42 U.S.C. § 405(g) and (h), when dealing with claims "arising under" the Act, federal courts are vested with jurisdiction only after the claimant has channeled its claims through the HHS and obtained a "final decision." *See Generous Home Care Mgmt., LLC v. Becerra*, No. 5:23-CV-00330-FB, 2024 WL 3843789, at *3 (W.D. Tex. July 22, 2024) (citing *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018)); *Confirm Lab., LLC v. Becerra*, No. 3:23-CV-0460-S, 2024 WL 1348422, at *2 (N.D. Tex. Mar.

28, 2024) (Scholer, J.) (citing *Fam. Rehab.*, 886 F.3d at 500). Known as the "channeling" or "exhaustion" requirement, it "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

The channeling inquiry turns on two questions. The first question courts must ask is whether the claim arises under the Act. If it does, the next question is whether the claimant has obtained a final decision from the HHS. Ordinarily, federal courts have jurisdiction only if both conditions are satisfied. *See Nat'l Infusion Ctr. Ass'n v. Becerra* (*NICA*), 116 F.4th 488, 504–05 (5th Cir. 2024) (Elrod, J.) (citations omitted). Otherwise, the court must typically dismiss the case for lack of subject-matter jurisdiction. *Chambers v. Berryhill*, No. 3:19-CV-1062-K-BH, 2020 WL 5099829, at *5 (N.D. Tex. Aug. 12, 2020) (Ramirez, M.J.) (citing 42 U.S.C. § 405(g)), *report and recommendation adopted*, 2020 WL 5094684 (N.D. Tex. Aug. 29, 2020) (Kinkeade, J.).

**A. Plaintiffs' claims "arise under" the Act.**

The Court begins with the first question: whether the Claims arise under the Act. A claim "arises under" the Act if the standing and substantive basis for the presentation of the claim are the Act. *NICA*, 116 F.4th at 505 (citing *Ill. Council*, 529 U.S. at 11). This is true regardless of whether the claimant seeks benefits, or declaratory or injunctive relief. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).

For a claim to meet the standing-and-substantive-basis test, the Act "must supply the claim's substance—not just its context." *Nichols v. Kennedy*, No. 2:25-CV-63-KHJ-MTP, 2026 WL 1694897, at *4 (S.D. Miss. Mar. 25, 2026), *appeal docketed*, No. 26-60389 (5th Cir. June 1, 2026). Put another way, the claim must challenge "what the Act requires or permits." *Id.* For instance, in Supreme Court precedent involving claims "arising under" the Act, "the plaintiff's *standing* came from being a beneficiary or regulated party under the statute, and the plaintiff's *substantive claim* turned on the meaning or application of a statutory provision." *Id.* (emphasis added) (citing *Weinberger v. Salfi*, 422 U.S. 749, 760–62 (1975) (eligibility provision); *Heckler*, 466 U.S. 602, 614–15 (coverage determination); *Ill. Council*, 529 U.S. at 5 (validity of Medicare regulations)).

In the Fifth Circuit, the controlling authority on the scope of claims arising under the Act is *NICA*. 116 F.4th at 505. In *NICA*, the court explained that Supreme Court precedent like *Illinois Council* "does not signify breadth in terms of the *types* of claims for which channeling is required," but in "the way the claim is *styled*." *NICA*, 116 F.4th at 508 (emphasis added). The court then identified two categories of claims for which channeling is required: (1) amount determination, and (2) eligibility claims. *Id*. at 506–07. "Amount determinations" are disputes about how Medicare reimbursements are calculated. *Id.* "Eligibility claims" are disputes about whether a particular person, company, or treatment qualifies for Medicare reimbursement. *Id.*

Here, the "arising under" dispute centers on 42 C.F.R. § 405.375. Section 405.375 is a Medicare regulation and part of the Act's regulatory scheme. *See* 42 U.S.C. § 1395hh (giving HHS Secretary authority to prescribe regulations). It governs the time limits for, and notification of, administrative determination after receipt of a rebuttal statement. 42 C.F.R. § 405.375. Paragraph (a) provides that, after receiving a rebuttal statement,

> CMS, the intermediary, or carrier must *within 15 days*, from the date the statement is received, *consider* the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment. Suspension, offset, or recoupment is not delayed beyond the date stated in the notice in order to review the statement.

42 C.F.R. § 405.375(a) (emphasis added). Paragraph (b) further requires that "[t]he Medicare contractor must send written notice of the determination made under paragraph (a) of this section to the provider or supplier." 42 C.F.R. § 405.375(b). Finally, Paragraph (c) clarifies that a "determination made under paragraph (a) of this section is not an initial determination and is not appealable." 42 C.F.R. § 405.375(c).

As discussed above, Plaintiffs argue Defendant acted negligently by failing to respond to the Consolidated Rebuttal Statement within 15 days of receipt pursuant to Section 405.375. Doc. No. 12 ¶¶ 22, 24, 29–36, 44–53; Doc. No. 25 at 5. Defendant, however, insists Plaintiffs are bringing negligence claims to "circumvent[] the law's clear exhaustion requirement." Doc. No. 21 at 1 (citation modified). To resolve this dispute, the Court starts by simply asking whether Plaintiffs' standing derives from

their status as regulated parties under the Act, and whether the substantive basis of their Claims turns on the meaning of a statutory provision in the Act. *See Nichols*, 2026 WL 1694897, at *4.

As to standing, Plaintiffs bring their Claims in their capacity as regulated parties under the Act. Specifically, Plaintiffs state that they "are Medicare 'providers' as defined in 42 C.F.R. § 400.202 with existing Medicare billing privileges." Doc. No. 12 ¶ 18. Plaintiffs further allege that Defendant, acting as a UPIC, injured them in that capacity. *See id.* ¶¶ 17, 21–22, 29, 37–54. Therefore, the Court finds that the standing for the presentation of the Claims comes from the Act.

Likewise, the substantive basis for the Claims is the Act, as resolving the Claims turns on the meaning and application of Section 405.375. In particular, the foundation of Plaintiffs' entire case is that Section 405.375 required Defendant to *respond* to the Consolidated Rebuttal Statement within 15 days of receipt and Defendant failed to do so. *Id.* ¶¶ 29–36; Doc. No. 25 at 5 ("This case turns on the requirements contained in a single federal regulation, 42 C.F.R. § 405.374."). Defendant, however, argues the plain language of the regulation merely required Defendant to *consider* the Consolidated Rebuttal Statement within that timeframe. Doc. No. 21 at 3. Evidently, resolving the Claims requires the Court to immerse itself in Section 405.375, engage in statutory interpretation, and make a factual determination as to whether Defendant complied. *See* Doc. No. 25 at 5 ("This case turns on the requirements contained in a single federal regulation, 42 C.F.R. § 405.375."), 5–6 (Plaintiffs acknowledging that resolving the

Claims requires the Court to interpret the Act). Therefore, the Court finds that the substantive basis for the presentation of the Claims also comes from the Act.

Taken together, these findings establish that both the standing and substantive basis of the Claims are the Act. But this conclusion does not end the inquiry. The Court must now consider the Fifth Circuit's holding in *NICA*, which further delineates the scope of the channeling requirement.

As discussed above, *NICA* holds that the channeling requirement applies to two categories of claims: amount-determination claims and eligibility claims. 116 F.4th at 506–08. *NICA* also declines to extend channeling to "any law affecting reimbursement." *Id.* at 507. The claims in *NICA* fell outside of both categories because the plaintiffs' injury arose "upstream" of any reimbursement determination, instead flowing from a drug-pricing statute that distorted market prices "before reimbursement is calculated." *Id.* at 507. The relationship between the claims and the Act was, in other words, merely contextual.

This case presents the inverse of *NICA*. Plaintiffs' injury here does not originate in a collateral statute that happens to affect prices; it originates in a reimbursement determination itself—Defendant's suspension of Plaintiffs' Medicare payments under Section 405.371(a)(2) and the rebuttal process under Section 405.375. Whether Defendant properly withheld Plaintiffs' payments, and whether Defendant followed the Act's procedures for reconsideration, are questions about a provider's entitlement to Medicare payments, not questions arising from another independent body of law.

Resolving them thus implicates the agency expertise that *Illinois Council*'s channeling rule exists to protect: the opportunity for HHS to "apply, interpret, or revise" its own suspension and rebuttal regulations before a court intervenes. *Id*. (quoting *Ill. Council*, 529 U.S. at 13). Therefore, because Plaintiffs' Claims sit on the reimbursement-determination side of the line *NICA* drew, *NICA* also points towards channeling.

In sum, the Court concludes that the Claims' standing and substantive basis derives from Section 405.375. And because Section 405.375 is part of the Medicare Act's regulatory scheme and capable of supporting "arising under" jurisdiction, *see* 42 U.S.C. § 1395hh; *Ill. Council*, 529 U.S. at 10–13, Plaintiffs' Claims necessarily arise under the Act. Therefore, Plaintiffs were required to channel their Claims through the HHS.

**B. Plaintiffs failed to channel their Claims through the HHS.**

Having concluded Plaintiffs' Claims arise under the Act, the Court now turns to the next question: whether Plaintiffs channeled the Claims through the HHS and obtained a final decision. The decision by an intermediary to suspend Medicare payments is not a final decision that can be reviewed. *Cyprian, Inc. v. Sebelius*, No. 4:10-CV-682-A, 2010 WL 11619492, at *2 (N.D. Tex. Oct. 25, 2010) (McBryde, J.) (citing 42 C.F.R. § 405.375(c)); *see also California ex rel. San Diego Comp. Pain Mgmt. Ctr., Inc. v. Eisengrein*, No. 24-cv-01481-BAS-BJC, 2025 WL 2663672, at *2–3 (S.D. Cal. Sept. 17, 2025) (Bashant, C.J.) (discussing channeling in context of Section 405.375). The plaintiff must instead wait for the intermediary to issue an overpayment determination.

*Cyprian, Inc.*, 2010 WL 11619492, at *2. The plaintiff may then appeal this determination through each stage of the administrative process and eventually bring the case to federal court. *Id.* Alternatively, a plaintiff may obtain an appealable final determination in this context "if the claims are subsequently denied, or if the provider is subsequently excluded from the Medicare program." *Citadel Healthcare Servs. Inc. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *5 (N.D. Tex. Dec. 8, 2010) (Ramirez, M.J.).

Here, Plaintiffs acknowledge they have not channeled their Claims through the HHS. Doc. No. 25 at 8. Plaintiffs instead argue that because Section 405.375(a) is not an initial determination and not appealable, there are no available administrative remedies for Plaintiffs to exhaust. *Id.* (referencing 42 C.F.R. § 405.375(c)). Although Plaintiffs are correct in this regard, this does not mean Plaintiffs can simply ignore the administrative process. Rather, Plaintiffs can still channel their Claims through the HHS and exhaust the administrative process if their temporary suspension ripens into a denial, overpayment demand, or an exclusion from the Medicare program. *Eisengrein*, 2025 WL 2663672, at *3; *Cyprian*, 2010 WL 11619492, at *2; *Citadel Healthcare*, 2010 WL 5101389, at *5.

Furthermore, the Court observes that Plaintiffs have not expressly invoked any exceptions to the channeling requirement, such as the collateral claim, mandamus, or "no review at all" exceptions. *See, e.g.*, *Med-Cert Home Care, LLC v. Becerra*, No. 3:18-CV-02372-E, 2023 WL 6202050, at *15 (N.D. Tex. Sep. 21, 2023) (Brown, J.)

(discussing the "three recognized exceptions" to the exhaustion requirement). Construed generously, Plaintiffs may have implicitly invoked the "no review at all" exception. Even so, it does not apply here because Plaintiffs' Claims are merely postponed, not denied. *See, e.g.*, *Ill. Council*, 529 U.S. at 19–20. Therefore, the undersigned concludes that Plaintiffs failed to channel their Claims through the HHS without any justifiable excuse for doing so.

**C. The Court lacks subject-matter jurisdiction and must dismiss.**

Because the Claims arise under the Act and Plaintiffs did not channel the Claims through the HHS and obtain a final decision, the Court lacks subject-matter jurisdiction and must dismiss. *See Chambers*, 2020 WL 5099829, at *5. As a result, the Court also cannot consider the arguments raised in the Motion pertaining to Rule 12(b)(6) failure to state a claim. *See Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 487.

Dismissal, and not remand, is appropriate since the Court derives its jurisdiction from the federal officer removal statute, 28 U.S.C. § 1442, which is an independent grant of jurisdiction, *IMFC Prof'l Servs. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 672 F.2d 152, 156 (5th Cir. Unit B 1982) (citing 28 U.S.C. § 1442); *see also Mesa v. California*, 489 U.S. 121, 137–38 (1989) (discussing jurisdiction from the federal officer removal statute); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *5 (5th Cir. Mar. 20, 2023) (per curiam) (affirming district court's decision to dismiss a removed case that was premised on the federal officer removal statute because "while removal jurisdiction was proper under § 1442(a),

the district court lacks subject matter jurisdiction at this time because Trinity failed to exhaust its administrative remedies"). Dismissal is without prejudice to Plaintiffs' right to pursue relief through the Act's administrative process and to appeal any final decision of the Secretary.

## IV. Conclusion

The Court has accepted all of Plaintiffs' nonfrivolous allegations in the Amended Complaint as true. *See Wolcott*, 635 F.3d at 763. Having done so, the Court concludes that it lacks subject-matter jurisdiction because Plaintiffs were required, but failed, to channel their Claims through the United States Department of Health and Human Services and exhaust their administrative remedies under the Medicare Act. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss. Because the Court lacks subject-matter jurisdiction, the Claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Signed August 11th, 2026.

Ed Kinkeade

ED KINKEADE
UNITED STATES DISTRICT JUDGE